UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Microsoft Corporation,

Plaintiff,

v.

Civ. No. 01-1769 (JNE/JGL)
ORDER

Ion Technologies Corporation and Paul Martin,

Defendants.

---

Roy Bartlett, Esq., Covington & Burling, and Felicia J. Boyd, Esq., Faegre & Benson LLP, appeared for Plaintiff Microsoft Corporation.

Kevin P. Hickey, Esq., Bassford, Lockhart, Truesdell & Briggs, P.A., appeared for Defendants Ion Technologies Corporation and Paul Martin.

---

This is an action by Microsoft Corporation against a software distributor, Ion Technologies Corporation (Ion), and the distributor's president and chief executive officer, Paul Martin. Microsoft asserts claims under federal law for copyright infringement, *see* 17 U.S.C. § 501 (2000), trademark infringement, *see* 15 U.S.C. § 1114 (2000), and false designation of origin, *see id.* § 1125. Microsoft also asserts claims under Minnesota law for deceptive trade practices, *see* Minn. Stat. § 325D.44 (2002), and unfair competition. The matter is before the Court on a Motion for Summary Judgment by Microsoft. For the reasons set forth below, the Court grants the motion in part.

## I. BACKGROUND

Microsoft has developed the following software titles: (1) Microsoft Office 2000 Professional Edition (Office Pro 2000), which contains Microsoft Excel 2000, Microsoft Outlook 2000, Microsoft Publisher 2000, Microsoft Word 2000, Microsoft Access 2000, and Microsoft PowerPoint 2000; (2) Microsoft Windows 98, Second Edition (Windows 98 SE); (3) Microsoft

FILED MAY 3 0 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Windows NT Workstation; and (4) Microsoft Windows NT Server. Microsoft owns the copyrights and trademarks associated with these titles.[1]

In September 1999, Microsoft received reports that Ion was distributing allegedly counterfeit Microsoft software. Microsoft responded by obtaining 14 copies of purported Microsoft software from Ion, including Office Pro 2000, Windows 98 SE, Windows NT Workstation, and Windows NT Server. Microsoft's analysis of the software obtained from Ion indicated that all of it was counterfeit.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[1] The registered copyrights at issue in this case are: TX 4-905-936; TX 4-905-950; TX 4-905-949; TX 4-906-019; TX 4-905-952; TX 4-905-937; TX 4-905-951; TX 4-955-024; TX 4-395-740; and TX 4-395-758. The registered trademarks at issue in this case are: 1,256,083; 1,200,236; 1,872,264; 1,955,219; 1,816,354; 1,815,350; 1,475,795; 1,741,086; 1,739,829; 2,188,125; and 1,982,562.

**A. Copyright Infringement**

Microsoft asserts that it is entitled to summary judgment on the issue of Ion's liability for copyright infringement. The owner of a copyright has the exclusive right to reproduce the copyrighted work, to prepare derivative works based upon the copyrighted work, and to distribute copies of the copyrighted work. 17 U.S.C. § 106(1)-(3) (2000). "Once a plaintiff has proven that he or she owns the copyright on a particular work, and that the defendant has infringed upon those 'exclusive rights,' the defendant is liable for the infringement and this liability is absolute." *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 829 (8th Cir. 1992); *see* 17 U.S.C. § 501; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In this case, it is undisputed that Microsoft owns the copyrights on Office Pro 2000, Excel 2000, Outlook 2000, Publisher 2000, Word 2000, Access 2000, PowerPoint 2000, Windows 98 SE, Windows NT Workstation, and Windows NT Server. It is also undisputed that Ion distributed the software at issue in this case. The only issue to be decided is whether Microsoft has submitted sufficient evidence establishing that the software is counterfeit.

Microsoft relies on the declaration of Kristi Bankhead, a paralegal in its Anti-piracy Department, who is trained to identify counterfeit Microsoft software. Bankhead identified security features in genuine Microsoft software that are not present in the software obtained from Ion, and she described how artwork on the software obtained from Ion deviates from the artwork on genuine Microsoft software. Specifically, she observed the following differences between genuine Microsoft software and the software obtained from Ion: (1) microtype on jewel-case liners; (2) artwork on jewel-case liners; (3) manufacturing codes on CD-ROMs; (4) holographic images on CD-ROMs; (5) artwork on CD-ROMs; (6) microtype on Certificate of Authenticity labels (COALs); (7) artwork on COALs; (8) interwoven threads in manuals; (9) microtype on

manuals; (10) artwork on packaging; and (11) microtype on packaging. On the basis of these differences, Bankhead concluded that the software obtained from Ion was counterfeit. Bankhead's declaration is sufficient to establish that the software distributed by Ion is counterfeit, and Ion has not offered any evidence indicating that the software is genuine.

Ion nevertheless contends that summary judgment is inappropriate because of credibility issues associated with relying on Bankhead, a Microsoft employee, to establish that the software is counterfeit. The Court does not find Ion's argument persuasive because "[m]ere allegations and conclusory statements that a witness is not credible are insufficient to preclude summary judgment." *Dunavant v. Moore*, 907 F.2d 77, 80 (8th Cir. 1990). Because no genuine issues of fact exist as to whether Microsoft owns the copyrights at issue in this case, and whether Ion distributed counterfeit Microsoft software, Microsoft is entitled to summary judgment on the issue of Ion's liability for copyright infringement.

Microsoft asserts that Martin is also liable for copyright infringement. An individual is liable for copyright infringement if he has the ability to supervise the infringing activity and a financial interest in that activity, or if he personally participates in that activity. *Pinkham*, 983 F.2d at 834. Martin argues that Microsoft has failed to establish that he is liable under either test.

To establish that Martin is vicariously liable for copyright infringement under the first test, Microsoft must show that he had the right and ability to supervise the infringing activity, and that he had an obvious and direct financial interest in exploitation of copyrighted materials. *See id.* With respect to supervision, it is undisputed that Martin held senior positions within Ion and had significant corporate responsibilities. He has served as Ion's chief executive officer since 1999, and as its president since 2001. He has the authority to hire and terminate employees. He delegated the authority to screen software to his employees in accordance with a

policy he instituted. He also has the ultimate authority to return suspected counterfeit software to suppliers, and to terminate suppliers. Although he is not on-site during regular business hours due to other full-time employment, his absence does not undermine his right and ability to supervise Ion's sales of counterfeit software. *See Crabshaw Music v. K-Bob's of El Paso, Inc.*, 744 F. Supp. 763, 767-68 (W.D. Tex. 1990). Under these circumstances, Microsoft has submitted sufficient evidence to establish that Martin had the right and ability to supervise Ion's infringing activities, and Martin has not submitted any evidence to create a genuine issue of fact on this issue. *See Pinkham*, 983 F.2d at 834; *Ford Motor Co. v. B & H Supply, Inc.*, 646 F. Supp. 975, 990 (D. Minn. 1986).

As to Martin's financial interest, Microsoft asserts that his salary from Ion and ownership interest in Ion's parent company establish that he had an obvious and direct financial interest in exploiting Microsoft's copyrighted materials. From 1999 through 2002, Martin's annual salary ranged from approximately $10,000 to $80,000. Tax documents prepared in 2000 reveal that he owned 34% of the common stock of Ion's parent company. As a shareholder in Ion's parent company, Martin had a financial interest in Ion's sales of counterfeit Microsoft software. *See Pinkham*, 983 F.2d at 834. Under these circumstances, Microsoft submitted sufficient evidence to establish that Martin had an obvious and direct financial interest in Ion's infringing activities, and Martin has not submitted evidence to create a genuine issue of fact on this issue.[2] *See id.*

---

2 Martin contends that Ion's efforts to screen out counterfeit software demonstrate that he has a direct financial interest in *not* selling counterfeit products. That Ion attempts to sell genuine Microsoft software does not vitiate Martin's interest in Ion's sales of counterfeit Microsoft software. Vicarious liability for copyright infringement does not depend on a party's intent to engage in or knowledge of the infringing activity. *See Burdick v. Koerner*, 988 F. Supp. 1206, 1209 (E.D. Wis. 1998) (stating that party need not be aware of infringing activity to be vicariously liable for copyright infringement); *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 553-54 (N.D. Tex. 1997) (stating that neither intent nor knowledge is element of

Microsoft also asserts that Martin is liable under the second test because he personally participated in Ion's infringement of Microsoft's copyrights. Again, it is undisputed that Martin instituted Ion's screening policy, that his employees review software in accordance with that policy, that he has the ultimate authority to return suspected counterfeit software to vendors, and that he has the ultimate authority to terminate Ion's relationship with vendors. Under these circumstances, Microsoft has submitted sufficient evidence to establish Martin's personal participation in Ion's infringing activities, and Martin has not submitted evidence to create a question of fact on this issue. *See id.*

In sum, no genuine issues of fact exist as to whether Martin is personally and vicariously liable for Ion's infringement of Microsoft's copyrights. Accordingly, Microsoft is entitled to summary judgment on its claim against Martin for copyright infringement.

**B. Trademark Infringement**

Microsoft claims that Ion infringed its trademarks in violation of 15 U.S.C. § 1114. Section 1114 creates civil liability for persons who, without the registrant's consent, "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to

---

vicarious liability for copyright infringement, and that "innocence" is therefore no defense); *Grupke v. Linda Lori Sportswear, Inc.*, 921 F. Supp. 987, 999 (E.D.N.Y. 1996) (stating that party who is unaware of copyright infringement may nevertheless be vicariously liable for the infringement); *Polygram Int'l Publ'g, Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1329 (D. Mass. 1994) (holding party vicariously liable for copyright infringement notwithstanding party's instruction to comply with copyright laws); *Superhype Publ'g, Inc. v. Vasiliou*, 838 F. Supp. 1220, 1225 (S.D. Ohio 1993) (stating that party need not consent to infringement to be vicariously liable for it).

deceive." *See DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 (8th Cir. 2003). The evidence submitted by Microsoft satisfies section 1114's requirements.

First, Microsoft registered the eleven marks at issue in this case on the Principal Register, and has used the marks continuously for more than five years. Consequently, Microsoft's right to use the marks is incontestable. *See* 15 U.S.C. § 1065 (2000). The incontestability of the marks is conclusive evidence of their validity, their ownership by Microsoft, and Microsoft's exclusive right to use them in commerce. *See id.* § 1115.

Next, as already discussed in the analysis of the claim for copyright infringement, Ion distributed fourteen copies of counterfeit Microsoft software. The software distributed by Ion bore unauthorized reproductions of eleven of Microsoft's registered marks.

Third, Microsoft software is distributed nationwide. Ion's distribution of the software at issue in this case satisfies the "in commerce" requirement. *See* 15 U.S.C. § 1127 (2000); *Coca-Cola Co v. Stewart*, 621 F.2d 287, 290 (8th Cir. 1980) ("Thus, 'in commerce' refers to the impact that infringement has on interstate use of a trademark; it does not mean that an infringer is immune from prosecution under the statute so long as he keeps his infringement entirely within the confines of a state.").

Finally, to determine whether a likelihood of confusion exists, a court should consider: (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to pass off its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the degree of care reasonably expected of potential purchasers. *Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997). "These factors do not operate in a mathematically precise formula; rather, [a court] use[s] them at the summary

judgment stage as a guide to determine whether a reasonable jury could find a likelihood of confusion." *Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996).

First, the distribution of Microsoft software throughout the world demonstrates the strength of Microsoft's trademarks. *Cf. Insty*Bit, Inc. v. Poly-Tech Indus., Inc.*, 95 F.3d 663, 670 (8th Cir. 1996) (stating that favorable reviews in magazines and nationally televised programs demonstrated strength of trade dress). Second, it is undisputed that Ion distributed counterfeit Microsoft software bearing reproductions of Microsoft's registered trademarks. Third, the counterfeit software distributed by Ion competed in the same marketplace as genuine Microsoft software. As to the fourth factor, "[i]ntent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of likelihood of confusion, but intent is not an element of a claim for trademark infringement." *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). Ion's customer invoices contain the following statement: "To the best of our knowledge all titles are genuine. If you have reason to believe otherwise, please return for full refund/replacement." Given that Ion screens the software it sells in an attempt to eliminate counterfeit software, Ion does not intend to "pass off" the products it sells as genuine Microsoft software. Ion intends for its customers to receive genuine software. Fifth, the purchases of the fourteen copies of counterfeit software demonstrate actual confusion. Finally, potential purchasers cannot reasonably be expected to distinguish between counterfeit software and genuine Microsoft software because the counterfeit software is manufactured so as to resemble genuine software. With the exception of the fourth factor, the factors weigh in favor of Microsoft. Under these circumstances, the likelihood of confusion is clear. *See Microsoft Corp. v. Logical Choice Computers, Inc.*, No. 99 C 1300, 2001 WL 58950, at *9 (N.D. Ill. Jan. 22, 2001); *Microsoft Corp. v. Compusource Distribs., Inc.*, 115 F. Supp. 2d 800, 806-07 (E.D. Mich.

2000) ("Where, as here, goods distributed by a defendant are virtually identical to the trademark owner's goods, likelihood of confusion is established."); *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1087-88 (D. Md. 1995) ("Where, as here, the goods distributed by Defendants are intentional copies and virtually identical to the trademark owner's goods, likelihood of confusion may be established at the summary judgment stage."); *Microsoft Corp. v. CMOS Techs., Inc.*, 872 F. Supp. 1329, 1335 (D.N.J. 1994) ("It would be difficult to imagine a clearer case of consumer confusion than the instant case in which the defendants, acting in direct competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety.").

In sum, Microsoft has submitted evidence establishing that Ion engaged in trademark infringement. Because Ion has not raised any genuine issue of fact on the elements of this claim, the Court grants Microsoft's motion on the issue of Ion's liability for trademark infringement.

Microsoft asserts that Martin is also liable for trademark infringement. A corporate officer is personally liable for the corporation's trademark infringement if the officer participates in that infringement. *See United States v. Washington Mint, LLC*, 115 F. Supp. 2d 1089, 1106 (D. Minn. 2000) (stating that individual employee may be personally liable for trademark infringement if he directly participates in the infringement); *B & H Supply*, 646 F. Supp. at 997 (holding individuals personally liable for trademark infringement based on their ownership and control of infringing corporations and their active participation in corporations' affairs). Again, it is undisputed that Martin has the authority to hire and fire employees, that he instituted Ion's screening policy, and that he has the ultimate authority to return merchandise to Ion's vendors and to terminate Ion's relationship with its vendors. Under these circumstances, Microsoft has submitted sufficient evidence to establish that Martin is liable for trademark infringement, and

Martin has not submitted evidence to create a dispute of fact on this issue. Microsoft is therefore entitled to summary judgment on the issue of Martin's liability for trademark infringement.

**C. False Designation of Origin**

Microsoft claims that Ion and Martin are liable under 15 U.S.C. § 1125(a)(1), for false designation of origin. Section 1125(a)(1) provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false of misleading representation of fact, which
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

As already discussed, it is undisputed that Ion and Martin distributed counterfeit Microsoft software bearing Microsoft's registered trademarks, that they used Microsoft's registered trademarks in commerce, and that the use of Microsoft's registered trademarks on counterfeit Microsoft software is likely to cause confusion as to the origin of the software. For these reasons, Microsoft is entitled to summary judgment on the issue of Ion's and Martin's liability for false designation of origin. *See Logical Choice Computers*, 2001 WL 58950, at *9; *Compusource Distribs.*, 115 F. Supp. 2d at 807; *Grey Computer*, 910 F. Supp. at 1088-89 ("Defendants' use of Microsoft's marks in connection with unauthorized products falsely implies or represents Microsoft's sponsorship and approval of those products."); *CMOS Techs.*, 872 F. Supp. at 1335-36.

**D. Deceptive Trade Practices and Unfair Competition**

Microsoft argues that it is entitled to summary judgment on its claims under Minnesota law for deceptive trade practices and unfair competition because it is entitled to summary judgment on its claim for false designation of origin. The claims for deceptive trade practices and unfair competition are coextensive with the claim for false designation of origin. *See Bloom*, 315 F.3d at 935 n.3 (collecting cases); *B & H Supply*, 646 F. Supp. at 994. Given that Microsoft is entitled to summary judgment on the issue of Ion's and Martin's liability for false designation of origin, Microsoft is also entitled to summary judgment on its claim that Ion and Martin engaged in deceptive trade practices and unfair competition.

**E. Statutory Damages**

Microsoft asserts that it is entitled to an award of statutory damages against Ion and Martin for copyright and trademark infringement. Although it maintains that Ion and Martin willfully infringed its copyrights and trademakrs, Microsoft seeks only the maximum statutory damages for non-willful infringement for purposes of this motion. Ion and Martin argue that Microsoft is not entitled to statutory damages because its actual loss is readily ascertainable. The Court rejects this argument because a copyright or trademark owner may elect at any time before final judgment is rendered to recover statutory damages instead of actual damages and profits. 15 U.S.C. § 1117(c) (2000) (trademark); 17 U.S.C. § 504(c)(1) (2000) (copyright). In this case, Microsoft has elected to recover statutory damages.

Ion and Martin also argue that Microsoft is not entitled to an award of statutory damages at this time because they are entitled to have a jury determination on this issue. The Court agrees. When a copyright or trademark owner elects statutory damages the defendant has a right to a jury determination of the amount of damages. *See Feltner v. Columbia Pictures Television,*

*Inc.*, 523 U.S. 340, 353 (1998) (copyright); *Bar-Meir v. N. Am. Die Casting Ass'n*, 55 Fed. Appx. 389, 390-91 (8th Cir. 2003) (per curiam) (trademark). Because Ion and Martin have demanded a jury trial, the Court denies Microsoft's motion insofar as it seeks a determination of the amount of statutory damages.

**F. Injunctive Relief, Attorney Fees, and Costs**

Microsoft asserts that it is entitled to a permanent injunction pursuant to 17 U.S.C. § 502(a) (2000), and 15 U.S.C. § 1116(a) (2000). It also seeks an award of attorney fees and costs pursuant to 17 U.S.C. § 505 (2000), and 15 U.S.C. § 1117(a). The Court denies Microsoft's requests as premature. After statutory damages have been determined, the Court will entertain a motion for an injunction, fees, and costs.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Microsoft's Motion for Summary Judgment [Docket No. 25] is GRANTED IN PART and DENIED IN PART.

2. Ion and Martin are liable to Microsoft for copyright infringement, trademark infringement, false designation of origin, engaging in deceptive trade practices, and engaging in unfair competition.

3. Ion and Martin are liable to Microsoft for statutory damages for infringing the following registered copyrights owned by Microsoft: TX 4-905-936; TX 4-905-950; TX 4-905-949; TX 4-906-019; TX 4-905-952; TX 4-905-937; TX 4-905-951; TX 4-955-024; TX 4-395-740; and TX 4-395-758.

4. Ion and Martin are liable to Microsoft for statutory damages for infringing the following registered trademarks owned by Microsoft: 1,256,083; 1,200,236; 1,872,264; 1,955,219; 1,816,354; 1,815,350; 1,475,795; 1,741,086; 1,739,829; 2,188,125; 1,982,562.

Dated: May 30, 2003

JOAN N. ERICKSEN
United States District Judge