UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Civil File No. 01-1769 JNE/JGL

Microsoft Corporation,

Plaintiff,

vs.

Ion Technologies Corporation and Paul Martin,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS OBJECTIONS TO THE DECEMBER 13, 2004, REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE JONATHAN LEBEDOFF**

---

## INTRODUCTION

Defendants Ion Technologies Corporation and Paul Martin ("Defendants") object to the December 13, 2004, Report and Recommendation of Magistrate Judge Jonathan Lebedoff and ask the Court to modify the findings and recommendation to conclude that no settlement has been reached with Microsoft Corporation ("Microsoft.") There has been no meeting of the minds as to material terms of the purported Settlement Agreement between Defendants and Microsoft. This matter should be restored to the trial calendar because the parties did not agree to the settlement terms that the Court now seeks to impose upon them.

## FACTS

Microsoft sued Defendants for copyright infringement and trademark infringement. Summary judgment was issued in favor of Microsoft on the issue of liability on May 30, 2003, and a trial was scheduled for November, 2004, on the issue of damages.

A settlement conference was held in this matter on October 22, 2004. At the settlement conference, the parties reached what at the time they believed to be an agreement in principle to

settle the case. Under the terms of the settlement, Defendants agreed to stipulate to a permanent injunction limiting their commercial activities and to pay Microsoft $300,000 in installments over a 54-month period. No documents were exchanged at the conference, however, and all parties adjourned with the understanding that the final written agreement would be subject to review of and agreement to the specific language. No formal record of proceedings was made. A draft was to be prepared by counsel for Microsoft. (Declaration of Kevin P. Hickey (hereafter "Hickey Decl."), ¶3).[1]

A "Draft Settlement Agreement" was prepared by counsel for Microsoft and was delivered to Mr. Hickey on October 26, 2004. The draft included language that had not been agreed to at the settlement conference. (Hickey Decl., ¶¶ 4-6) The language in section 2 of the Agreement was entitled "Non-Dischargeability/Reservation of Right to Assert Non-Dischargeability." The language in Section 2 of the October 26 draft implied that Ion had admitted to willful copyright and trademark infringement and had also agreed that the settlement obligation would not be dischargeable in any subsequent bankruptcy proceeding. (Id.) The parties had not agreed to those terms at the settlement conference.

Defendants did not agree to a settlement admitting willfulness or that the settlement obligation to Microsoft was not dischargeable in bankruptcy. (Declaration of Paul Martin (hereafter "Martin Decl.") §§ 7,8)[2] They would not have agreed to a settlement containing those terms. (Id. at ¶ 6). Similarly, Defendants did not agree to an injunction that prohibited Ion from distributing software with stand-alone Certificates of Authenticity. (Martin Decl. §§ 9-12). Although Defendants understood that, in its earlier demands, Microsoft sought an injunction

---

[1] The Declaration of Kevin P. Hickey, who served as counsel for the Defendants until December 6, 2004, and represented them at the settlement conference, was previously submitted and is not refiled with this Objection.

[2] The Declaration of Paul Martin was submitted in connection with the Motion To Enforce Settlement Agreement and is not re-submitted in connection with this Objection.

prohibiting further distribution of stand-alone Certificates of Authenticity, Defendants believed that, for the purposes of settlement on October 22, 2004, Microsoft had relented and was willing to accept a more limited injunction. (Martin Decl. §§ 10-12) Defendants did not agree to (and would not have agreed to) a settlement that included a demand for a stipulated permanent injunction prohibiting the distribution of stand-alone Certificates of Authenticity with genuine MICROSOFT® software. (Martin Decl. ¶ 8).

After the parties were unable to come to terms, Microsoft filed a Motion To Enforce Settlement Agreement. At the hearing on the Motion on December 13, 2004, counsel for Microsoft conceded that the draft Settlement Agreement misstated in one respect the terms the parties and counsel had hammered out on October 22: Defendants had not, after all, agreed that the settlement obligation would not be dischargeable in bankruptcy. Microsoft clung to its other points, however, and insisted that Defendants had agreed to admit to willful infringement in the settlement agreement and had agreed to a permanent injunction prohibiting the future sale of stand-alone Certificates of Authority, even in connection with genuine MICROSOFT® software. Defendants maintained, as they had throughout, that the Microsoft draft did not accurately reflect the terms agreed to by the parties.

In his Report and Recommendation, Chief Magistrate Judge Lebedoff concluded that Defendants were right about willfulness but that Microsoft was right about the Certificates of Authority. Relying on "the Court's clear recollection," the Court found that Defendants had not agreed during the settlement conference to admit to willful copyright infringement, but that Microsoft had nonetheless agreed to a settlement without that admission. (Report and Recommendation at 2-3) Therefore, the Magistrate Judge concluded, there had been a meeting

of the minds, and the "admission of willfulness" language should be stricken from the final settlement agreement.

With respect to the stand-alone Certificates of Authenticity, however, Chief Magistrate Judge Lebedoff reached a different conclusion. Based on "the Court's and Microsoft's counsel's recollection that Defendant's counsel at the time, Kevin Hickey, agreed to this language on behalf of his clients," the Magistrate Judge concluded that Defendants had agreed to an injunction prohibiting distribution of software with stand-alone Certificates of Authority. (Report and Recommendation at 3) The Court noted that Mr. Hickey's Declaration did not include a statement to the contrary and that the individual Defendant, Mr. Martin, had not been present during the discussion. (Id.) Therefore, the Court reasoned, Mr. Martin's Declaration – which contained a sworn statement that Defendants would not have agreed to a settlement if it contained such a prohibition -- "is not useful in this respect." (Id.) The Court concluded that there had been a meeting of the minds on the issue of stand-alone Certificates of Authority and the permanent injunction should contain the language proposed by Microsoft.

## ARGUMENT

### A. Standard of Review

When objections are made to the Report and Recommendation of a Magistrate Judge, the District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1)(C). This Court should review the Motion To Enforce Settlement Agreement and sustain Defendants' objections to the Report and Recommendation.

The Magistrate Judge has, without reference to a formal record, imposed upon the parties a contract that neither side can agree includes the essential terms negotiated on October 22, 2004. Moreover, in reaching that conclusion, the Magistrate Judge disregarded the sworn testimony of

Mr. Martin that the Defendants would not have agreed to a permanent injunction prohibiting the distribution of stand-alone Certificates of Authenticity. Instead, the Magistrate Judge concluded that representations made by and among counsel, without confirmation of the parties to be bound, represented a "meeting of the minds" sufficient to form a binding contract.

**B. A Settlement Requires A Meeting of the Minds As To Essential Terms**

Settlement agreements are governed by basic principles of contract law. *Sheng v. Starkey Lab., Inc.*, 53 F.3d 192, 194 (8th Cir. 1995). As with any contract, for a settlement agreement to be valid there must be an offer, acceptance, and valid consideration, *S O Designs U.S.A., Inc. v. Rollerblade, Inc.*, 620 N.W.2d 48, 53 (Minn. App. 2000), *rev. denied* (Minn. Feb. 21, 2001). There also must be a meeting of the minds as to the materials terms of the contract. *Minnesota Cablesystems v. City of Minneapolis*, 299 N.W.2d 121, 122 (Minn. 1980).

The question of whether a term is "material" to a contract is one of law for the court. *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp.2d 1021 (D. Minn. 2003). Those items upon which the settlement hinges are "material." *Sheng*, 117 F.3d at 1083. In this case, the terms in dispute were clearly material.

1. **THE COURT HAS DETERMINED THAT DEFENDANTS DID NOT ACT WILLFULLY**

An unwilling admission of willfulness would have prejudiced Defendants in future proceedings. First, it is contrary to the law of the case: in ruling on Microsoft's motion for summary judgment of trademark infringement, the Court concluded that Ion did "not intend to 'pass off' the products it sells as genuine Microsoft software. Ion intends for its customers to receive genuine software." (Mem. And Order, 5/30/2003, at 8). To prove willful copyright infringement, Microsoft would have to prove that Defendants intentionally trafficked in software they knew to be counterfeit. *United States v. Moran*, 757 F.Supp.1046, 1050 (D. Neb. 1991)(in

copyright law, willfulness requires knowledge that the defendant's conduct constitutes infringement).

The Court's determination that Defendants intended to sell genuine software forecloses a finding of willfulness. The "law of the case" doctrine mitigates against reconsideration of issues addressed in a prior district court order in earlier stages of the same case. *Little Earth of the United Tribes, Inc. v. U.S. Dept. of Housing and Urban Development*, 807 F.2d 1433, 1438 (8th Cir. 1986) The doctrine prevents the relitigation of settled issues and requires courts to adhere to decisions made in earlier proceedings. *Popp Telecom, Inc. v. American Sharecom, Inc.*, 361 F.3d 482, 490 (8th Cir. 2004); *see also, Arizona v. California,* 460 U.S. 605, 618 (1983). The law of the case doctrine has been held to apply to issues decided implicitly as well as those decided explicitly within earlier opinions. *Kan. Pub. Employees Ret. Sys. v. Blackwell, Sanders, Matheny, Weary & Lombardi, L.C.,* 114 F.3d 679, 687 (8th Cir. 1997) The purpose of the doctrine is to "insure uniformity of decisions, protect the expectations of the parties and promote judicial economy." *In re Just Brakes Corporate Systems, Inc.*, 293 F.3d 1069, 1072 (8th Cir. 2002) (en banc) (enunciated in the context of a district court's obligation to follow the Court of Appeals on remand). Thus, the footnote conclusion in the Report and Recommendation that there has been no clear finding on the issue of willfulness must be overruled.

2. **ION DID NOT AGREE NOT TO SELL CERTIFICATES OF AUTHENTICITY**

Ion did not agree to a permanent injunction against the further sale of stand-alone Certificates of Authenticity. If Ion is in a position to sell genuine MICROSOFT® software in the future, it should be permitted to certify to its authenticity. Ion agreed in the settlement to abide by an injunction against the sale of stand-alone End User License Agreements; Mr. Martin did not understand that the injunction would extend to stand-alone Certificates of Authenticity,

however, and he did not agree to such a broad injunction when the parties settled in principle. Therefore there was no meeting of the minds between the parties; the Court cannot impose upon Defendants terms of a settlement that results from a mutual mistake among counsel and the Magistrate Judge.

"[W]here there is a dispute as to whether a settlement was reached, it is ordinarily for the trial court to determine what the facts are." *Jallen v. Agre*, 119 N.W.2d 739, 742 (Minn. 1963). Although in Minnesota courts have the authority to make factual determinations as to the existence of a settlement agreement when there is a dispute between the parties, this authority cannot extend to the determination of individual terms of an agreement when the parties and the Court cannot agree on what those terms are.

It is clear that no meeting of the minds existed as to essential terms of the ordered settlement agreement, because *both* parties have taken the position that, had the court's version of the agreement been on the table, neither party would have agreed to those terms. As the Report and Recommendation states, to be enforceable, a settlement agreement must be based upon "a meeting of the minds on the essential terms of the agreement." *MIF Realty L.P. v. Rochester Associates*, 92 F.3d 752, 756 (8th Cir. 1996) (quoting *Ryan v. Ryan,* 292 Minn. 52, 193 N.W.2d 295, 297 (1971)). A district court has the inherent power to summarily enforce a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. *Gatz v. Southwest Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988). However, "a district court may only enforce *completed* settlement agreements." *Simmons, Inc. v. Koronis Parts, Inc.*, 2002 WL 1347401, *2 (D. Minn. 2002) (emphasis supplid) (quoting citing *Callie v. Near,* 829 F.2d 888, 890 (9th Cir.1987)) . Where there is a substantial factual dispute concerning the existence or terms of the settlement agreement, a district court must hold an

evidentiary hearing and must conclude that an agreement has been reached on all material terms before ordering an enforcement. *Simmons*, 2002 WL 1347401, *2 (D. Minn. 2002). If an alleged settlement agreement is so uncertain as to any of its essential terms that it cannot be consummated without new and additional stipulations between the parties, it is not a valid agreement. *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49, 53 (Minn. App. 1992).

In this case "[t]here is no question that the disputed terms are material to the agreement." (Report and Recommendation at 2). Although a settlement agreement may be enforced where the parties continue to disagree as to ancillary matters, continued disagreement as to essential terms should alert the Court to the fact that no agreement has in fact been reached. The Report and Recommendation itself demonstrates that no meeting of the minds existed between the parties, who offer diametrically opposing recollections as to both disputed terms. The law does not countenance attempts by courts to coerce settlements. *In re Ashcroft*, 888 F.2d 546 (8th Cir. 1989). In *MIF Realty L.P. v. Rochester Associates*, 92 F.3d 752 (8th Cir. 1996), for instance, the court held that the trial court erred in finding the parties entered into a settlement agreement. In *MIF Realty,* the record showed that parties were mistaken as to an oral agreement, *both* parties argued that no settlement had been reached, and no written settlement had been signed. The positions of the parties in this case similarly demonstrate that no meeting of the minds existed as to essential terms, and therefore no enforceable settlement agreement has been established.

The lack of any record of the settlement negotiations is another reason that the Court may not order enforcement of the terms according to its recollection. To establish an enforceable contract, there must be an offer, acceptance, and valid consideration. *S O Designs*, 620 N.W.2d at 53. For an acceptance to be valid and to give rise to a binding contract it must be enunciated in unequivocal and positive terms which comply exactly with the requirements of the offer.

*Minar v. Skoog*, 50 N.W.2d 300, 302. In *Goddard,* no settlement agreement existed where there was an absence of any showing by the parties that the agreement was made. 291 F. Supp. 2d at 1029 (record only included a series of letters between the parties). Similarly, no record of any kind is available in the present case to show the existence or terms of an agreement between the parties, and therefore no offer or acceptance can be shown to have taken place. Although the court has the authority to make factual determinations as to the existence of an agreement between parties, such a determination cannot be made in the total absence of a record. Moreover, to the extent that a record exists, in the form of the recollection of the Magistrate Judge, it is a record created when the Defendants – the parties to be bound – were not present and did not acknowledge that they understood and/or agreed to the terms.

Lastly, the Report and Recommendation is an improper reformation of the agreement. Settlement agreements are governed by basic principles of contract law. *Sheng*, 53 F.3d at 194. In Minnesota, a court has the authority to reform a contract only if the moving party proves by "clear and consistent, unequivocal and convincing evidence" that (1) there was a valid agreement between the parties expressing their real intentions, (2) the written instrument failed to express the real intentions of the parties, and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. *Hurd v. Hurd*, 2004 WL 2166375, *6 (Minn. App. 2004). In the present case, no evidence exists as to any of the three elements necessary for the court to reform a contractual agreement.

When there has been no meeting of the minds as to the material terms of the agreement, no settlement has been reached. *Goddard,* 291 F. Supp.2d at 1026-1031. As evidenced by the conflicting representations made by counsel for Microsoft and Defendants and their counsel, there was no meeting of the minds on October 22. No settlement was reached.

## CONCLUSION

The Court must sustain Defendants' objections to the Report and Recommendation, deny in its entirety the Motion To Enforce Settlement Agreement, and set this matter on for trial on the issue of damages.

Respectfully submitted,

LINDQUIST & VENNUM, P.L.L.P.

Dated: December 27, 2004.

By__s/Bruce H. Little________________________
Bruce H. Little MN Reg. No. 17241X
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 371-3211

ATTORNEYS FOR DEFENDANTS ION TECHNOLOGIES CORPORATION and PAUL MARTIN