**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| MICROSOFT CORPORATION a Washington corporation<br><br>Plaintiff,<br><br>v.<br><br>ION TECHNOLOGIES CORP., a Minnesota corporation, and PAUL MARTIN, an individual,<br><br>Defendant. | Civil Action No. 01-1769 (JNE/JGL)<br><br>**PLAINTIFF MICROSOFT'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE DECEMBER 13, 2004 REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE JONATHAN LEBEDOFF** |

## INTRODUCTION

Defendants Ion Technologies Corp.'s ("Ion") and Paul Martin's (collectively "Defendants") object to the Report and Recommendation of Magistrate Judge Lebedoff ("Report") regarding Plaintiff's Motion to Enforce Settlement Agreement in this anti-piracy case. Plaintiff Microsoft Corp. ("Plaintiff") submits that the Report should be adopted in its entirety. Magistrate Judge Lebedoff correctly ruled that the case was settled before him at an October 22, 2004 Settlement Conference and that Defendants agreed to a permanent injunction barring them from, among other things, selling all stand-alone Microsoft licenses. Magistrate Judge Lebedoff specifically found that "it is the Court's . . . recollection that Defendants' counsel at the time . . . agreed to this language on behalf of his clients. . . . Thus, there was a meeting of the minds on this issue, and the permanent injunction should contain this language." Report at 3.

Defendants' objections to the settlement are simply a case of settlers' remorse. The matter was settled in October 2004; the case was dismissed; and the November 2004 trial date vacated. Having

settled the case, obtained a dismissal and vacated the trial date, Defendants cannot now arm themselves with a new set of lawyers with a new set of theories and renege on a judicially supervised settlement because they have second thoughts about the deal. The settlement should be enforced, and the Permanent Injunction agreed to as part of the settlement should be entered.

## RELEVANT FACTUAL BACKGROUND

This anti-piracy case was filed in September 2001 after Plaintiff caught Defendants selling more than 14 units of counterfeit Microsoft software throughout the country on eight different occasions, including after Plaintiff had warned Defendants to stop selling counterfeit product. *See* Court's 5/30/03 Memorandum and Order at 1-2 ("Summary Judgment Order"). Discovery later showed that the piracy was widespread and ongoing.

In May 2003, the Court granted Plaintiff's motion for summary judgment in part, finding that Defendants had sold counterfeit product and were liable for copyright infringement, trademark infringement, and unfair competition. Summary Judgment Order at 12. The Court set the remaining issues, including willfulness and statutory damages, for a jury trial. *Id.* The Court did not, as Defendants now contend, rule that Defendants' infringement was non-willful. Indeed, the Court could not have so found since *Defendants never moved for summary judgment* on any claim or issue, let alone on the issue of willfulness. Declaration of Roy Bartlett ("Bartlett Decl.") ¶ 2.

As of last Fall, this case was set for a jury trial to commence on November 2, 2004, on the issues of Defendants' willfulness and the amount of statutory damages owed to Plaintiff. On October 22, 2004, Chief Magistrate Judge Lebedoff presided over a three-hour Settlement Conference. It was the second such settlement conference held before Magistrate Judge Lebedoff, and he was fully familiar

with the case and the parties.[1] Bartlett Decl. ¶ 12, Exh. B [Boyd Decl.]. In attendance were counsel for both parties, Heather Logan on behalf of Microsoft, and Paul Martin, Ion's Chief Executive Officer. *Id.*

After extended discussions, the parties agreed to settle the case, and circulated a page that listed the key terms of the settlement. *Id.* As relevant to this opposition, the key terms included: (1) entry of a permanent injunction against Defendants, including a provision enjoining and restraining Defendants from distributing, offering for distribution, selling, or offering for sale any stand-alone licenses (both COAs and EULAs) for Microsoft software; and (2) a payment by Defendants to Microsoft in the amount of $300,000 through a specified payment plan. Report at 1-3; Bartlett Decl. ¶¶ 4, 12, Exh. B. Defendants re-confirmed their agreement to the settlement that same day after lunch. At Magistrate Judge Lebedoff's request, the terms of the parties' agreement were recited and he made a minute entry of the settlement on the docket the same day. Bartlett Decl. Exhs. A and B.

As agreed by the parties, Plaintiff drafted the settlement papers memorializing the terms of the settlement - - a draft Settlement Agreement and Release and, attached to it, a draft Stipulated Permanent Injunction - - and delivered them to Defendants on October 26, 2004. Bartlett Decl. ¶¶ 8, 12, Exh. B. The proposed injunction specifically provided, as agreed, that Defendants were enjoined from selling any "stand-alone Certificate of Authenticity or End User License Agreements for Microsoft software." Bartlett Decl. ¶ 8. Upon receiving the papers, Defendants said nothing, let alone did they object to the license language. *Id.* ¶ 9. Based on the settlement, this Court subsequently entered an Order for Dismissal on October 29, 2004, thereby vacating the trial date. Bartlett Decl. ¶ 10.

---

[1] The first conference was held on November 13, 2003, and the case almost settled for $300,000 payable to Microsoft and a stipulated permanent injunction in a form that was circulated between the parties. Bartlett Decl. ¶ 12, Exh. A [Boyd Decl.].

In the days that followed, Defendants inexplicably failed to endorse the settlement documents, failed to contact Plaintiff to discuss the settlement documents, and failed to fulfill any of their settlement obligations (*e.g.*, payment to Plaintiff). Bartlett Decl. ¶ 11. Plaintiff's many efforts to reach Defendants were unsuccessful. *Id.* ¶ 12, Exh. B. Around this time, Defendants also broke off contact with the attorney of record who represented them during the Settlement Conference and former counsel filed a motion to withdraw.[2] *Id.* Among other things, former counsel noted that there were disagreements about the settlement and that Defendants were not following his advice.

Plaintiff filed a Motion to Enforce the Settlement Agreement on November 29, 2004. Bartlett Decl. ¶ 12. Defendants, represented by new counsel, filed their opposition on December 7, 2004. *Id.* ¶ 13. In that opposition, for the first time, Defendants took the position that the matter was not settled and that they only agreed (or meant to agree) not to sell EULAs, as opposed to all types of stand-alone licenses, as part of the agreed upon injunction. *Id.* Under Local Rules, Plaintiffs did not get a reply but obviously took exception with Defendants' newly-minted position.

On December 13, 2004, Judge Lebedoff held a hearing on Plaintiff's Motion to Enforce. *Id.* That same day, Judge Lebedoff issued the Report, in which he found that the parties had reached a binding settlement agreement, including an agreement regarding the scope of the permanent injunction, during the Settlement Conference. The Report includes a recommendation that, consistent with the parties' agreement, this Court order the parties to execute a permanent injunction enjoining Defendants from distributing or selling stand-alone COAs. Report at 3.

[2] Counsel filed a motion to withdraw as counsel of record for Defendants on November 16, 2004. Counsel indicated that his relationship with Defendants had been "effectively terminated" and that Defendants had declined to follow his advice or recommendations.

Plaintiff is prepared to revise and execute the settlement agreement and permanent injunction as recommended in the Report.

## ARGUMENT

### A. The Report's Reference To This Court's Summary Judgment Order Is Accurate; This Court Reserved The Issue of Willful Infringement For Trial.

Defendants first object to the Report's statement that "Judge Ericksen's summary judgment order of May 30, 2003 is not dispositive on this issue [willful infringement] as the order did not include a clear finding on the element of willfulness." Defendants erroneously contend that this Court previously determined that Defendants "did not act willfully" when they infringed Microsoft's intellectual property rights. Obj. at 5. The Court clearly knows best what it did and did not decide and the Summary Judgment Order speaks for itself. However, Plaintiff submits that the Court did not find, and could not possibly have found, in Defendants' favor that they acted non-willfully given the evidence and the fact that Defendants never moved on the issue.

Whether defendants *willfully* infringed Microsoft's copyrights and trademarks is relevant solely to determining the amount of statutory damages. *See* 17 U.S.C. § 504(c); 15 U.S.C. § 1117(c); *Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F. Supp. 2d 800, 812 (E.D. Mich. 2000). In its Summary Judgment Order, this Court expressly reserved the determination of the amount of statutory damages (which, as described above, includes a determination of willfulness) for trial. Summary Judgment Order at 11-12.

Despite the Court's clear reservation of the willfulness issue, Defendants contend that the Court made a finding a non-willful infringement when it conducted the likelihood of confusion analysis for trademark infringement. Obj. at 5-6. However, the Court did not find the infringement was non-willful,

only that Defendants did not intend to "pass off" products it sells as genuine Microsoft software. Summary Judgment Order at 8.

This has nothing to do with the willfulness issue, and Defendant's reading of the Summary Judgment Order is wrong. The standard for determining likelihood of confusion based on "passing off" goods is different than that for establishing willful infringement. *See SquirtCo v. The Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)(noting that passing off requires a showing of specific intent). To establish willfulness for copyright infringement, Microsoft need only show that Defendants knew their conduct was a copyright infringement or that they recklessly disregarded that possibility. *See, e.g., Kepner-Trego, Inc. v. Vroom*, 186 F. 3d 282, 288 (2d Cir. 1999); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994); *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F. 2d 773, 779 (8th Cir. 1988). Similarly, to establish that Defendants willfully infringed Microsoft's trademarks, Microsoft need only show that Defendants knew they were likely infringing the marks or that they acted with "willful blindness" to Microsoft's rights. *See* 15 U.S.C. § 1117(b); *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989); *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1093 (D.Md. 1995).

In any event, Plaintiff submitted overwhelming evidence of *willful* infringement by Defendants in its motion for summary judgment.[3] *See, e.g.*, Declaration of David Leyba ("Leyba Decl.")(submitted

[3] For example, Microsoft submitted evidence showing that Defendants continued to distribute counterfeit software even after they received cease and desist and warning letters from Microsoft. *See. e.g.*, Leyba Decl.. Such conduct by itself is compelling evidence of willful infringement. *See, e.g., Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991); *Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F. Supp. 2d 800, 812 (E.D. Mich. 2000). Microsoft also submitted evidence that Defendants continued to buy and sell thousands of counterfeit Microsoft software products from known suppliers of counterfeit software. *See, e.g.*, Boyd Decl. This practice establishes by itself Defendants' deliberate indifference, willfulness, willful blindness and reckless disregard. *See, e.g., Compusource*, 115 F. Supp. 2d at 809. Microsoft also submitted evidence that Defendants' screening program demonstrates willful blindness because Defendants continued to acquire purported Microsoft software from the same unauthorized and suspicious suppliers. *See, e.g.*, Boyd Supp. Decl.

in support of Microsoft's motion for summary judgment); Declaration of Felicia Boyd ("Boyd. Decl.)(submitted in support of Microsoft's motion for summary judgment). Given such evidence, the Court could not have found non-willfulness as a matter of law. Thus the Court expressly reserved the determination of statutory damages for trial.

Finally, the Court was not asked to find non-willfulness. As a procedural matter, Defendants would have had to move for summary judgment before the Court could make such a ruling. Here, Defendants did file a motion for summary judgment, but that motion was not heard; it either was withdrawn or taken off calendar because it was untimely. Bartlett Decl. ¶ 2. Accordingly, Defendants' motion was never presented to or decided by the Court. *Id.*

Based on the above, we submit that the Court should not excise from the Report the statement regarding the Court's Summary Judgment Order.

### B. The Parties Entered Into A Binding Agreement At The Settlement Conference That the Injunction Would Enjoin Defendants From Distributing, Offering To Distribute, Selling, Or Offering For Sale Any Stand-Alone COAs.

Defendants object to the Report's finding that the settlement included an injunction barring sale of all stand-alone licenses because Defendant Martin "did not understand that the injunction would extend to stand-alone Certificates of Authenticity." Obj. at 6. Defendants are wrong, and the Magistrate Judge's ruling should be adopted.

#### 1. Magistrate Judge Lebedoff's Recollection and Finding Establish A Record That The Parties Reached A Binding Agreement Regarding The Scope Of The Injunction.

Judge Lebedoff's Report notes "[i]t is the Court's and Microsoft's counsel's recollection that Defendants counsel at the time...agreed to this language [prohibiting the sale of stand-alone COAs] on

---

It is willful blindness if a defendant continues to buy software from the same unauthorized dealers after receiving notification the dealers were selling counterfeit Microsoft software. *See Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1008-1010 (S.D. Tex. 2000).

behalf of his clients." Report at 3. This finding of fact cannot be ignored; it must be given great weight and deference. *See, e.g.*, D. Minn. L.R. 72.1(b)(2); *Simmons, Inc. v. Koronis Parts, Inc.*, 2002 WL 127401 *1 (D. Minn. June 18, 2002)(the "standard of review is extremely deferential).

There is ample evidence supporting, indeed compelling, the Magistrate Judge's finding that the parties agreed to a ban on all stand-alone licenses. First, as detailed in the Report, the Magistrate Judge specifically recalled that the parties informed of their agreement to the ban. Second, Plaintiff's representative and counsel present at the conference confirm that the parties expressly agreed to ban all stand-alone licenses. *See* Declaration of Heather Logan ("Logan Decl.") ¶¶ 3-6; Bartlett Decl. ¶¶ 5-6, 12, Exh. B. Third, Defendants' then counsel of record, who was present at the Settlement Conference, did not dispute Plaintiff's position regarding the scope of the injunction. Bartlett Decl. ¶11, Exh. A.

Ignoring this evidence, Defendants argue that Defendant Martin understood the ban was limited to EULA stand-alone licenses and did not include COA stand-alone licenses and that there is "no record of any kind…to show the existence…of an agreement between the parties." Obj. at 9. Defendant Martin's unexplained and unilateral understanding is beside the point. All the evidence is that the parties expressly agreed to a ban on all stand-alone licenses. The fact that, upon reflection, Defendant Martin may want to reshape the agreement more to his favor does not alter the agreement that was made at the Settlement Conference and communicated to the Magistrate Judge.

In addition, Defendant Martin fails to offer any explanation as to why this Court should discount or ignore Judge Lebedoff's recollection. After all, Judge Lebedoff was present at the Settlement Conference, and, at his request, the terms of the parties' agreement were recited for the Court, including the relevant terms of a permanent injunction. Magistrate Judge Lebedoff then entered the settlement in the docket. That minute entry, combined with the Judge's recollection as set forth in the Report,

establish a record that the parties reached a binding agreement during the Settlement Conference. *See, e.g.*, *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985) (holding that a settlement agreement is binding when parties have agreed on "material terms"); *Austin Farm Ctr., Inc. v. Austin Grain Co.*, 418 N.W.2d 181, 184 (Minn. Ct. App. 1988) (a settlement agreement is not required to be in writing to bind the parties).

**2. Defendants' Current Disagreement With The Scope Of The Agreed Upon Injunction Does Not Alter The Parties' Agreement At The Settlement Conference.**

Defendants argue that the mere presence of disagreement regarding the terms of the injunction indicates that "no agreement has in fact been reached." Obj. at 8. This cannot be the case. Under Defendants' approach, a party could easily renege on any oral, binding settlement agreement merely by claiming, after the fact, that he now disputes one or more of the essential terms because he is unhappy with them. Not surprisingly, the law is to the contrary. *See, e.g.*, *Worthy*, 756 F.2d at 1373 ("parties to a voluntary settlement agreement cannot avoid the agreement simply because the agreement ultimately proves to be disadvantageous"); *Trnka v. Elanco Products Co.*, 709 F.2d 1223, 1227 (8th Cir. 1983) (absent fraud, duress or undue influence, a party cannot "extricate himself from being bound by a clear, complete and voluntary agreement which ultimately proved to be disadvantageous").

Defendants' reliance on *MIF Realty L.P. v. Rochester Associates*, 92 F.3d 752 (8th Cir. 1996) is misplaced. In *MIF Realty*, the parties supposedly reached a settlement agreement *out of court*, yet never succeeded in reducing the assumed oral agreement to writing. Here, however, the parties reached a binding agreement that was confirmed *in open court*, a fact that was recorded on the docket.

**3. An Injunction Enjoining Defendants From Distributing And Selling *Stand-Alone* COAs Will Not Prevent Defendants From Certifying The Authenticity Of Genuine Microsoft Software.**

Defendants argue that they never would have agreed to an injunction prohibiting the distribution and sale of stand-alone COAs because such an injunction would prevent them from certifying the authenticity of any genuine Microsoft software they might sell in the future. Obj. at 6. That is simply not the case.

The agreed upon injunction does not prohibit Defendants from including genuine Microsoft COAs *with* genuine Microsoft software. It merely prohibits the distribution and sale of *stand-alone* COAs, i.e., sales of licenses without the software. Plaintiff has long regarded stand-alone COAs as an aid to infringement. Specifically, some counterfeiters buy stand-alone COAs to go with their counterfeit copies of software so that an innocent consumer will think he or she has purchased a genuine article of software when in fact they have not. The sale of stand-alone licenses of all types is such a problem that Congress has now outlawed it altogether. Specifically, Congress recognized in the recently enacted Anti-counterfeiting Amendments Act of 2004 ("the Act") that the distribution and sale of stand-alone COAs and other licensing components has no legitimate purpose. *See* Anti-counterfeiting Amendments Act of 2004, Pub. L. No. 108-482, § 102, 118 Stat. 3912 (Dec. 23, 2004). The Act expressly prohibits trafficking in genuine, standalone COAs (as well as other licensing components).

Neither the permanent injunction that Defendants agreed to nor the new law prevent Defendants from selling genuine software with genuine licenses.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an order enforcing the terms of the parties' agreement consistent with Judge Lebedoff's Report.[4]

Dated: January 11, 2005

FAEGRE & BENSON LLP

s/Felicia J. Boyd

Felicia J. Boyd, No. 186168
Kara Benson, No. 248290
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Facsimile: (612) 766-1600

Roy Bartlett, *pro hac vice*
Cameron Alston, *pro hac vice*
Covington & Burling, One Front Street
San Francisco, California 94111
Phone: (415) 591-7065
Facsimile: (415) 591-6091

Attorneys for Plaintiff
Microsoft Corporation

M2:20684432.01

[4] Defendants appear to suggest that the Magistrate Judge was required to hold an evidentiary hearing here because there is a factual dispute concerning the terms of the settlement agreement. Obj. at 7-8. "As a general rule, when the parties dispute the existence or terms of a settlement agreement, the parties *must be allowed* an evidentiary hearing." *Sheng v. Starkey Laboratories, Inc.*, 53 F.3d 192, 194 (8th Cir. 1995) (emphasis added). Defendants did not request any special evidentiary hearing and thus cannot complain now for the first time. Defendants either have committed invited error or they have waived their rights. In either case, the report cannot be rejected for failure, if any, to hold a more elaborate hearing before the Magistrate Judge.