**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| MICROSOFT CORPORATION a Washington corporation<br><br>Plaintiff,<br><br>v.<br><br>ION TECHNOLOGIES CORP., a Minnesota corporation, and PAUL MARTIN, an individual,<br><br>Defendant. | ) | Civil Action No. 01-1769 (JNE/JGL)<br><br>**DECLARATION OF ROY M. BARTLETT IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT** |

I, Roy M. Bartlettt, do hereby declare and say:

1. I am an attorney admitted to practice *pro hac vice* before this Court and am co-counsel of record for Plaintiff Microsoft Corp. in this case.

2. On May 30, 2003, the Court granted Plaintiff's Motion for Summary Judgment in part, finding that defendants Ion Technologies, Inc. and Paul Martin were liable for copyright and trademark infringement. The Court did not have before it nor did it decide any motion for summary judgment by defendants. Although defendants did file a motion for partial summary judgment, it was untimely, and it was withdrawn and/or not heard.

3. I attended the Settlement Conference before Chief Magistrate Judge Lebedoff on October 22, 2004, on behalf of Plaintiff.

4. The parties agreed to settle this matter at the Settlement Conference. The terms included, among other things, an agreement by the defendants to stipulate to a permanent injunction barring them from selling or distributing any stand alone licenses, including Certificates of Authenticity (sometimes called COAs or COALs).

5. At the conference, defendants agreed not to sell stand-alone licenses, including COAs, as a term of the settlement. Specifically, near the end of the formal mediation session, counsel for the defendants, Kevin Hickey, came to the room the Magistrate Judge had assigned us and said that the defendants were agreeable to all terms under discussion, including the ban on selling stand-alone licenses, but wondered whether Microsoft would agree that the defendants could be allowed to sell their existing inventory of COAs. Microsoft's representative, Heather Logan, promptly answered "no," explaining that sale of such stand-alone licenses is illegal and is viewed by Microsoft as infringing its intellectual property rights. Mr. Hickey said he thought that would be the case and would advise his client. Mr. Hickey returned a few minutes later and said that the defendants were dropping their request for permission to sell their inventory of COAs and agreed to the ban on stand-alone licenses.

6. The defendants never retracted their agreement regarding the ban on the sale of licenses and a few minutes later, the mediation session was adjourned. The matter was thus settled by agreement, which included a permanent injunction barring the defendants from selling any and all stand-alone Microsoft licenses.

7. I understand that the defendants now contend that they only agreed not to sell stand-alone End User License Agreements ("EULAs") and not COAs. This is not true; the defendants never communicated such a distinction, let alone was it discussed.

8. At the conference, the parties agreed that plaintiff would prepare the formal settlement papers. On October 25, 2004, we forwarded the draft agreements to co-counsel. Among other things, the draft Permanent Injunction, attached to the Settlement Agreement, included a provision barring defendants from selling stand-alone licenses such as EULAs and COAs. This was precisely the same

language used in the previous draft injunctions provided to defendants. Co-counsel then delivered the papers to defendants on October 26, 2004 by email.

9. At the time, defendants did not object to the draft injunction or otherwise indicate there were any problems with the proposed settlement papers.

10. On October 29, 2004, this Court entered an order dismissing the case and vacating the November 2, 2004 trial date. The Court reserved jurisdiction for 45 days to effectuate the settlement if necessary.

11. By mid-November 2004, defendants still had not signed the settlement papers or contacted Plaintiff to discuss them. Rather, defendants' counsel informed us that there were problems with his client and he likely would be withdrawing as counsel. On November 16, 2004, counsel filed a motion to withdraw. Attached hereto as Exhibit A is a true and correct copy of the Declaration of Kevin Hickey (now defendants' former counsel) in support of that motion.

12. On November 29, 2004, plaintiff filed its Motion To Enforce Settlement Agreement. Attached hereto as Exhibit B is a true and correct copy of the Declaration of Felicia Boyd, co-counsel of record for Plaintiffs, in support of the motion.

13. On December 7, 2004, defendants filed their opposition to the motion to enforce the settlement agreement. In that motion, defendants took the position for the first time that there was no settlement because defendants had agreed (or meant to agree) only not to sell End User License Agreements (also called EULAs ), and not all stand-alone licenses. Local Rules did not allow plaintiff a reply, and the motion was heard by Magistrate Judge Lebedoff on December 13, 2004. Later that same day, the Magistrate Judge issued his Report and Recommendation on Plaintiff's Motion To Enforce.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 11th day of January 2005 in San Francisco, California.

s/Roy M. Bartlett
Roy M. Bartlett

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**FOURTH DIVISION**

---

Civil File No. 01-1769 JNE/JGL

Microsoft Corporation,

Plaintiff,

vs.

**AFFIDAVIT OF KEVIN P. HICKEY**

Ion Technologies Corporation and Paul Martin,

Defendants.

---

STATE OF MINNESOTA )
) ss.
COUNTY OF HENNEPIN )

Kevin P. Hickey, being duly sworn, states and deposes as follows:

1. I am a shareholder in the law firm of Bassford Remele, A Professional Association, counsel of record for the defendant in this matter. This firm was substituted as counsel of record for defendants in this matter on May 10, 2002.

2. On October 22, 2004, I attended a settlement conference with the Court in this matter along with Paul Martin, a named defendant, and the chief executive officer of defendant Ion Technologies Corporation.

3. A settlement was reached in principle during this conference, subject to approval of the Settlement Agreement.

4. Since the settlement conference, I have made repeated efforts to address the Settlement Agreement with my clients. Following the settlement conference, my clients have effectively terminated me by refusing to follow my advice and recommendations, refusing to give me any authority to act or make representations on their behalf in connection with this matter,

and have indicated that they have sought outside counsel to advise them in this matter. In addition, while I cannot provide any further detail because of the attorney-client privilege, I believe that it would be a potential or actual conflict of interest for me to continue to represent the defendants in this matter. I have consulted with ethics counsel regarding this matter.

5. I have advised defendants that I would need to withdraw under these circumstances, and defendants have advised me that they intend to move forward with other legal counsel. I have asked to be informed of the identity of the other legal counsel as soon as such identity is available so that such legal counsel can be substituted in this matter as appropriate. To date, I have not been informed of the identity of any outside counsel.

6. I have also made it clear to the defendants that I will cooperate in all respects in transitioning the file to new counsel.

s/Kevin P. Hickey
Kevin P. Hickey

Subscribed and sworn to before me
this 16th day of November, 2004.

s/Mary P. Bordian
Notary Public

442819.doc

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| MICROSOFT CORPORATION a Washington corporation<br><br>Plaintiff,<br><br>v.<br><br>ION TECHNOLOGIES CORP., a Minnesota corporation, and PAUL MARTIN, an individual,<br><br>Defendant. | ) | Civil Action No. 01-1769 (JNE/JGL)<br><br>**DECLARATION OF FELICIA J. BOYD** |

I, Felicia J. Boyd, do hereby declare and say:

1. I am a Partner at the law firm of Faegre & Benson L.L. P., and am counsel for plaintiff Microsoft Corporation ("Microsoft" or "Plaintiff") in the above-captioned action. I am licensed to practice in the state of Minnesota and am admitted to practice before this Court. I have personal knowledge of the facts set forth within this declaration.

2. The parties' first Settlement Conference before Judge Lebedoff was held on November 13, 2003. During that conference, the case almost settled for $300,000 payable to Microsoft and a stipulated permanent injunction. The proposed stipulated injunction was circulated between the parties. The parties ultimately failed to reach a settlement because defendants Ion Technologies Corp. and Paul Martin (collectively "Defendants") refused to agree to one of the provisions in the stipulated injunction prohibiting them from selling stand-alone Microsoft licenses.

3. The parties participated in a second Settlement Conference before Magistrate Lebedoff on October 22, 2004. During the second Conference, the parties agreed to settle the action, and agreed to the following material terms: (1) the entry of a permanent injunction

against Defendants in the form proposed at the first conference that includes, among other provisions, a provision enjoining and restraining Defendants from distributing, offering for distribution, selling, or offering for sale any stand-alone Certificates of Authenticity or End User License Agreements for Microsoft software; (2) an admission by Defendants that they had willfully infringed Microsoft's copyrights and trademarks; (3) a payment by Defendants to Microsoft in the amount of $300,000, in the form of an initial payment of $30,000 and subsequent monthly payments of $5,000 to continue for fifty-four months; and (4) an agreement by Microsoft to dismiss this action.

4. Plaintiff drafted a Settlement Agreement and Release and [Proposed] Stipulated Permanent Injunction that incorporated the material terms of the agreement reached by the parties during the Settlement Conference, and forwarded those documents to Defendants on October 27, 2004. As of the date of this declaration, Defendants have failed to contact Microsoft to discuss the settlement documents, have failed to endorse the settlement documents, and have failed to fulfill any of their obligations under the settlement agreement reached at the settlement conference. Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement and Release that was forwarded to Defendants. Attached hereto as Exhibit B is a true and correct copy of the [Proposed] Stipulated Permanent Injunction that was forwarded to Defendants. Aside from a few minor ministerial changes, Exhibit B is identical to the Stipulated Permanent Injunction that was proposed during the parties' first Settlement Conference in November 2003 and agreed to at the settlement Conference in November 2004.

5. I have made several attempts to contact Defendants to discuss the status of the settlement documents. These efforts have included voicemail and e-mail messages. When I finally made telephone contact with Kevin Hickey, counsel for Defendants, I was advised that he

was filing a motion to withdraw as counsel because his clients refused to communicate with him. On November 16, 2004, counsel for Defendants did file and serve a motion to withdraw as counsel of record for Defendants. A true and correct copy of the affidavit of counsel in support of that motion is attached hereto as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of November, 2004.

/s Felicia J. Boyd
Felicia J. Boyd

# SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is executed by and between Microsoft Corporation, a Washington Corporation ("Microsoft"), Ion Technologies Corporation, a Minnesota Corporation ("Ion"), and Paul Martin, an individual ("Martin") (Ion and Martin are referred to herein as "Defendants;" Microsoft and Defendants are referred to herein collectively as the "Parties").

## RECITALS

A. On September 26, 2001, Microsoft filed an action against Defendants in the United States District Court for the District of Minnesota entitled *Microsoft Corporation v. Ion Technologies Corporation and Paul Martin*, No. 01-1769-JNE/JGL (the "Action").

B. Microsoft alleged in the Action that Defendants had willfully infringed Microsoft's copyrights and trademarks by offering for sale and distributing counterfeit copies of Microsoft software throughout the United States, among other things.

C. On May 30, 2003, the Court granted in part Microsoft's motion for summary judgment, finding both Ion and Martin liable to Microsoft for copyright infringement, trademark infringement, false designation of origin, engaging in deceptive trade practices, and engaging in unfair competition, and ordered trial on the issues of willfulness and statutory damages.

D. Shortly before trial, at a Settlement Conference on October 22, 2004, the Parties reached a settlement of this matter. The Parties hereby memorialize the terms of this settlement in writing.

E. The Parties voluntarily enter into this Agreement and by so doing the Parties seek and intend to fully, completely, and finally resolve, terminate, and settle all disputes, claims, and actions which they assert against each other arising from the facts alleged in the Action, including those claims which were actually asserted or which could have been asserted in the Action or by counterclaim in the Action, and to preclude the possibility of further disputes between them arising out of the facts alleged in the Action.

## TERMS OF AGREEMENT

The parties agree as follows:

1. Payment to Microsoft. Defendants shall pay to Microsoft a total of Three-Hundred Thousand United States Dollars ($300,000.00) in installment payments. Defendants shall pay to Microsoft Thirty Thousand United States Dollars ($30,000.00) upon the execution of this Agreement (or no later than November 1, 2004) and Five Thousand United States Dollars ($5,000.00) per month for each of the following 54 months thereafter (payable on the first day of each month starting December 1, 2004, with a 10-day grace period). Payment shall be made by wire transfer to an account to be designated by Microsoft.

2. Non-Dischargeability/Reservation of Right to Assert Non-Dischargeability of Debt. The Parties agree that the payment obligations set forth in paragraph 1, above, are predicated upon allegations that Defendants willfully infringed Microsoft's registered trademarks and copyrights. The Parties further agree that damages based on a finding of willful infringement of registered copyrights and trademarks are non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(6), and any successor provision of the federal bankruptcy laws. Microsoft hereby expressly reserves it right to assert the non-dischargeable nature of the payment obligations set forth in paragraph 1, above, during bankruptcy proceedings, if any, involving Defendants. Defendants agree that they will not challenge or otherwise dispute Microsoft's right to assert non-dischargeability.

3. Stipulation to Permanent Injunction. Concurrently with the execution of this Agreement, Microsoft and Defendants shall execute and file a Stipulated Permanent Injunction in the form attached hereto as Exhibit A.

4. Dismissal of Action Without Prejudice. Upon receipt of the initial $30,000 payment obligation set forth in paragraph 1, above, Microsoft and Defendants shall promptly execute and file a Request for Dismissal of the complaint without prejudice pursuant to Federal Rules of Civil Procedure Rule 41(a) in the form attached hereto as Exhibit B. The Parties agree to toll the statute of limitations from the date of execution of this Agreement until the release of all claims by Microsoft as set forth in paragraph 7, below.

5. Cooperation. Defendants agree to reasonably cooperate with Microsoft in connection with any civil litigation, prosecution or proceedings relating to alleged infringement of Microsoft's copyright or trademark rights by any current or former third party vendor, partner, or supplier of Defendants. Defendants agree that Microsoft and its counsel of record in this case may retain copies of all documents produced in this case by Defendants, including those marked "Confidential" or "Restricted," and they need not be returned to Defendants or destroyed. Furthermore, for a period of 36 months following the execution of this Agreement, Defendants agree to advise Microsoft of any d/b/a name changes or new entities owned and operated by Defendants that distribute Microsoft Software.

6. Continuing Jurisdiction of Court. The Parties agree that the United States District Court for the District of Minnesota shall continue to have jurisdiction of the Action and of this Agreement to the extent necessary to enforce this Agreement and the Stipulated Permanent Injunction.

7. Release of Claims by Microsoft. Except as otherwise provided by this Agreement, upon completion of the payment obligations described in paragraph 1, above, and entry of the Stipulated Permanent Injunction and dismissal described in paragraphs 3 and 4, above, Microsoft, together with its assigns, successors, affiliated parent or subsidiary corporations, agents, officers, directors, employees, and attorneys, release and discharge Defendants together with their successors, affiliated parent or subsidiary corporations, employees, and attorneys, from any and all charges, claims, actions, causes of action, rights, demands, debts, obligations, damages, or accountings of whatever nature, known or unknown, which Microsoft has had or could have up to and until the date of this Agreement,

whether at law or equity, including without limitation all claims that were or could have been asserted by Microsoft against Defendants in the Action.

8. Release of Claims by Defendants. Except as otherwise provided by this Agreement, upon execution of this Agreement and upon the entry of the Stipulated Permanent Injunction and dismissal described in paragraphs 3 and 4, above, Defendants together with their successors, affiliated parent or subsidiary corporations, officers, directors, employees, and attorneys, release and discharge Microsoft, together with its assigns, successors, affiliated parent or subsidiary corporations, agents, officers, directors, employees, and attorneys, from any and all charges, claims, actions, causes of action, rights, demands, debts, obligations, damages, or accountings of whatever nature, known or unknown, which Defendants have had or could have up to and until the date of this Agreement, whether at law or equity, including without limitation all counterclaims that were or could have been asserted against Microsoft, in the Action.

9. No Waiver of Future Claims. The Parties do not waive any future claims, including, but not limited to, claims arising from or relating to a breach of this Agreement.

10. Notices. Any notice provided for under this Agreement shall be sent

(a) to Microsoft at and in care of: Roy Bartlett, Covington & Burling, One Front Street, San Francisco, CA 94111.

(b) to Defendants at and in care of:

11. Breach. The Parties agree that in the event of a breach of any provision of this Agreement, the non-breaching party shall be entitled to whatever remedies are available at law or equity, including, if otherwise available, its reasonable attorneys' fees and costs.

In the event of any subsequent breach by Defendants of the Stipulated Permanent Injunction described in paragraph 3, above, Microsoft shall be entitled to seek whatever remedies are available at law or equity, including, if otherwise available, its reasonable attorneys' fees and costs.

12. Authority. Each individual executing this Agreement on behalf of an entity represents and warrants that he or she is a duly authorized representative of that entity with full power and authority to bind it to each and every term and condition hereof, and that the entity on whose behalf he or she is signing has taken all steps necessary to authorize and approve its entering into and binding itself to each and every term and condition thereof. Each party represents and warrants to the others that he, she or it has taken all steps necessary to authorize and approve his, her or its entering into and binding himself, herself or itself to each and every term and condition of this Agreement and any documentation to be delivered in connection therewith. Each party making any of the foregoing representations or warranties shall indemnify, defend and hold harmless the other parties and the persons and entities receiving a release under this Agreement from any claim that, if true or valid, would breach that individual or party's representation or warranty.

13. Entire Agreement. This Agreement supersedes any prior or contemporaneous communications, whether written or oral, concerning the terms of this Agreement, and constitutes the complete and final agreement of the Parties with respect to the subject matter. The terms of this Agreement are contractual and may not be modified, except by agreement in writing signed by the party against whom enforcement of the modification is sought. Nor may any covenant, representation, warranty, or other provision be waived, except by agreement in writing signed by the party against whom enforcement of the waiver is sought.

14. Parties Represented. Each party to this Agreement has been advised and represented by counsel in connection with the negotiation and preparation hereof, and each shall be deemed its co-author for purposes of the Agreement's construction.

15. No Waiver. The waiver by any party hereto of any right, privilege, covenant or condition hereunder will not operate as or evidence a waiver of any other, or a continuing waiver of the same, right, privilege, covenant or condition hereunder.

16. Choice of Law. This Agreement shall be governed by the law of the State of Minnesota applicable to contracts executed and to be wholly performed in that State. The Parties agree that all disputes arising in any way out of this Agreement shall be heard exclusively in, and the Parties irrevocably consent to jurisdiction and venue in, the state and Federal courts of Minnesota.

17. General Provisions.

(a) This Agreement shall take effect upon execution by all Parties hereto, and may be executed in counterparts, each of which shall have the effect of an original. A party shall be deemed to have executed this Agreement when it has signed below and sent to the other party via facsimile or overnight mail a copy of the signed Agreement.

(b) The language of this Agreement is a product of the mutual effort of the Parties and their attorneys. The Agreement shall be construed fairly as to all Parties, and it shall not be construed for or against any of the Parties on the basis of the extent to which that party has participated in drafting it.

(c) In the event any provision of this Agreement is found to be unenforceable, that finding shall not affect the enforceability of any other provision hereof.

IN WITNESS WHEREOF, the Parties have executed this Agreement by signing below.

DATED: October ____, 2004

Ion Technologies Corporation, a Minnesota corporation

______________________________

By: Paul Martin

DATED: October ____, 2004

Paul Martin, an individual

______________________________

By: Paul Martin

DATED: October ____, 2004

MICROSOFT CORPORATION, a Washington Corporation

______________________________

By: Bonnie MacNaughton
Senior Attorney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Microsoft Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Ion Technologies Corporation and Paul Martin,<br><br>Defendants. | Civil Action No. 01-1769 (JNE/JGL)<br><br>**[PROPOSED] STIPULATED PERMANENT INJUNCTION AGAINST DEFENDANTS ION TECHNOLOGIES CORP. AND PAUL MARTIN** |

Plaintiff Microsoft Corporation ("Microsoft") and Defendants Ion Technologies Corporation and Paul Martin (collectively "Defendants") hereby STIPULATE and AGREE, and the Court ORDERS, that Defendants along with each of their agents, representatives, servants, employees, attorneys, successors, and assigns, and all others acting in concert or participation with them who receive actual notice of this order, are PERMANENTLY ENJOINED AND RESTRAINED from each of the following:

1. making any unauthorized use of, or engaging in any unauthorized distribution of (i) software (the term "software" shall hereinafter be defined to include all computer software programs recorded on magnetic diskettes and/or CD-ROMS and related materials) and/or any other products protected by Microsoft's registered trademarks, including, but not limited to, the following trademark registration numbers:

(1) 1,256,083 ("MICROSOFT");

(2) 1,200,236 ("MICROSOFT");

(3) 1,872,264 ("WINDOWS");

(4) 1,955,219 ("WINDOWS NT");

(5) 1,816,354 (WINDOWS FLAG LOGO);

(6) 1,815,350 (COLORED WINDOWS LOGO);

(7) 1,982,562 (PUZZLE PIECE LOGO);

(8) 1,741,086 ("MICROSOFT ACCESS");

(9) 1,739,829 ("MICROSOFT ACCESS");

(10) 2,188,125 ("OUTLOOK"); and

(11) 1,475,795 ("POWERPOINT");

and/or (ii) software and/or any components protected by Copyright Registration, including but not limited to the following Copyright Registration Nos.:

(1) TX 4-905-936 ("Microsoft Office 2000 Professional");

(2) TX 4-905-950 ("Microsoft Access 2000");

(3) TX 4-905-949 ("Microsoft Excel 2000");

(4) TX 4-906-019 ("Microsoft Outlook 2000");

(5) TX 4-905-952 ("Microsoft PowerPoint 2000");

(6) TX 4-905-937 ("Microsoft Publisher 2000");

(7) TX 4-905-951 ("Microsoft Word 2000");

(8) TX 4-955-024 ("Microsoft Windows 98 Second Edition");

(9) TX 4-395-740 ("Microsoft Windows NT Workstation"); and

(10) TX 4-395-758 ("Microsoft Windows NT Server");

and (iii) any other works now or hereafter protected by any Microsoft trademark or copyright;

2. manufacturing, distributing, offering for distribution, importing, selling, offering for sale, or advertising any software, and/or any other product bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks, service marks, or copyrights, including, but not limited to, the marks and copyrights represented by the trademark, service mark, and copyright registrations listed in Paragraph 1., above;

3. using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks or service marks in connection with the manufacture, distribution, offering for distribution, circulation, import, sale, offering for sale, or advertisement of any software, product, or thing not authorized or licensed by Microsoft;

4. using any false designation of origin or false or misleading representation or fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of the software or goods distributed, offered for distribution, sold, offered for sale, or advertised;

5. distributing, offering for distribution, selling, offering for sale, posting on a server Microsoft software for download use or via the Internet or any other electronic means;

6. distributing, offering for distribution, selling, or offering for sale any stand-alone Certificate of Authenticity or End User License Agreements for Microsoft software;

7. distributing, offering for distribution, selling, or offering for sale, Microsoft software obtained from suppliers known to distribute counterfeit software;

8. engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service mark, or copyrights;

9. distributing, offering for distribution, selling, offering for sale, advertising, purchasing or possessing any stolen or fraudulently obtained Microsoft software or components;

10. assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (9), above.

**IT IS SO STIPULATED.**

DATED: October ____, 2004

Ion Technologies Corporation, a Minnesota corporation

______________________________

By: Paul Martin

DATED: October ____, 2004

Paul Martin, an individual

______________________________

By: Paul Martin

DATED: October ____, 2004

MICROSOFT CORPORATION, a Washington Corporation

______________________________

**APPROVED AS TO FORM:**

Dated : October_____, 2004

______________________________

Felicia J. Boyd, No. 186168
Kara L. Benson, No. 248290
FAEGRE & BENSON LLP

Roy Bartlett, pro hac vice
Cameron Alston, pro hac vice
COVINGTON & BURLING, LLP

*Attorneys for Plaintiff*
*Microsoft Corporation*

Dated: October_____, 2004

______________________________

Kevin P. Hickey, No. 202484
BASSFORD, LOCKHART, TRUESDELL & BRIGGS, P.A.

*Attorneys for Defendants*
*Ion Technologies Corporation and Paul Martin*

**IT IS SO ORDERED.**

DATED: October ____, 2004

_______________________________
UNITED STATES DISTRICT JUDGE