# Exhibit B

# COVINGTON & BURLING

ONE FRONT STREET
SAN FRANCISCO, CA 94111
TEL 415.591.6000
FAX 415.591.6091
WWW.COV.COM

SAN FRANCISCO
WASHINGTON, DC
NEW YORK
LONDON
BRUSSELS

ROY M. BARTLETT
TEL 415.591.7088
FAX 415.955.6588
RBARTLETT@COV.COM

July 8, 2005

VIA FEDERAL EXPRESS

Bruce H. Little
Lindquist & Vennum P.L.L.P.
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
Tel: 612-371-3211

Re: Microsoft Corporation v. Ion Technologies Corporation and Paul Martin, Civil No. 01-1769 JEL/AJB (D. Minn.)

Dear Bruce:

Pursuant to the Court's July 5, 2005 Order adopting Magistrate Judge Lebedoff's Report and Recommendation, enclosed please find a revised written settlement agreement and a stipulated permanent injunction.

We conformed the settlement agreement to the Court's ruling by revising section 2 entitled "Reservation of Right to Assert Non-Dischargeability of Debt." In addition, we deleted former section 4 of the agreement (stipulated dismissal) as the Court has already dismissed the case, and added point of contact information for defendants in section 9.

Please review and execute these documents as soon as possible and return them to my attention by July 15, 2005. Please give me a call if you have any questions or concerns.

Sincerely,

R. M. B[signature]

Roy. M. Bartlett

Enclosures

SF: 72530-1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Microsoft Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Ion Technologies Corporation and Paul Martin,<br><br>Defendants. | Civil Action No. 01-1769 (JNE/JGL)<br><br>**[PROPOSED] STIPULATED PERMANENT INJUNCTION AGAINST DEFENDANTS ION TECHNOLOGIES CORP. AND PAUL MARTIN** |

Plaintiff Microsoft Corporation ("Microsoft") and Defendants Ion Technologies Corporation and Paul Martin (collectively "Defendants") hereby STIPULATE and AGREE, and the Court ORDERS, that Defendants along with each of their agents, representatives, servants, employees, attorneys, successors, and assigns, and all others acting in concert or participation with them who receive actual notice of this order, are PERMANENTLY ENJOINED AND RESTRAINED from each of the following:

1. making any unauthorized use of, or engaging in any unauthorized distribution of (i) software (the term "software" shall hereinafter be defined to include all computer software programs recorded on magnetic diskettes and/or CD-ROMS and related materials) and/or any other products protected by Microsoft's registered trademarks, including, but not limited to, the following trademark registration numbers:

(1) 1,256,083 ("MICROSOFT");

(2) 1,200,236 ("MICROSOFT");

(3) 1,872,264 ("WINDOWS");

(4) 1,955,219 ("WINDOWS NT");

(5) 1,816,354 (WINDOWS FLAG LOGO);

(6) 1,815,350 (COLORED WINDOWS LOGO);

(7) 1,982,562 (PUZZLE PIECE LOGO);

(8) 1,741,086 ("MICROSOFT ACCESS");

(9) 1,739,829 ("MICROSOFT ACCESS");

(10) 2,188,125 ("OUTLOOK"); and

(11) 1,475,795 ("POWERPOINT");

and/or (ii) software and/or any components protected by Copyright Registration, including but not limited to the following Copyright Registration Nos.:

(1) TX 4-905-936 ("Microsoft Office 2000 Professional");

(2) TX 4-905-950 ("Microsoft Access 2000");

(3) TX 4-905-949 ("Microsoft Excel 2000");

(4) TX 4-906-019 ("Microsoft Outlook 2000");

(5) TX 4-905-952 ("Microsoft PowerPoint 2000");

(6) TX 4-905-937 ("Microsoft Publisher 2000");

(7) TX 4-905-951 ("Microsoft Word 2000");

(8) TX 4-955-024 ("Microsoft Windows 98 Second Edition");

(9) TX 4-395-740 ("Microsoft Windows NT Workstation"); and

(10) TX 4-395-758 ("Microsoft Windows NT Server");

and (iii) any other works now or hereafter protected by any Microsoft trademark or copyright;

2. manufacturing, distributing, offering for distribution, importing, selling, offering for sale, or advertising any software, and/or any other product bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks, service marks, or copyrights, including, but not limited to, the marks and copyrights represented by the trademark, service mark, and copyright registrations listed in Paragraph 1., above;

3. using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks or service marks in connection with the manufacture, distribution, offering for distribution, circulation, import, sale, offering for sale, or advertisement of any software, product, or thing not authorized or licensed by Microsoft;

4. using any false designation of origin or false or misleading representation or fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of the software or goods distributed, offered for distribution, sold, offered for sale, or advertised;

5. distributing, offering for distribution, selling, offering for sale, posting on a server Microsoft software for download use or via the Internet or any other electronic means;

6. distributing, offering for distribution, selling, or offering for sale any stand-alone Certificate of Authenticity or End User License Agreements for Microsoft software;

7. distributing, offering for distribution, selling, or offering for sale, Microsoft software obtained from suppliers known to distribute counterfeit software;

8. engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service mark, or copyrights;

9. distributing, offering for distribution, selling, offering for sale, advertising, purchasing or possessing any stolen or fraudulently obtained Microsoft software or components; and

10. assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (9), above.

**IT IS SO STIPULATED.**

DATED: July ____, 2005

Ion Technologies Corporation, a Minnesota corporation

______________________________

By: Paul Martin

DATED: July ____, 2005

Paul Martin, an individual

______________________________

By: Paul Martin

DATED: July ____, 2005

MICROSOFT CORPORATION, a Washington Corporation

______________________________

**APPROVED AS TO FORM:**

Dated : July____, 2005

______________________________
Felicia J. Boyd, No. 186168
Kara L. Benson, No. 248290
FAEGRE & BENSON LLP

Roy Bartlett, pro hac vice
Cameron Alston, pro hac vice
COVINGTON & BURLING, LLP

*Attorneys for Plaintiff*
*Microsoft Corporation*

Dated: July____, 2005

______________________________
Bruce H. Little, No. 17241X
LINDQUIST & VENNUM, P.L.L.P.

*Attorneys for Defendants*
*Ion Technologies Corporation and Paul Martin*

**IT IS SO ORDERED.**

DATED: July ___, 2005

______________________________
UNITED STATES DISTRICT JUDGE

# SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is executed by and between Microsoft Corporation, a Washington Corporation ("Microsoft"), Ion Technologies Corporation, a Minnesota Corporation ("Ion"), and Paul Martin, an individual ("Martin") (Ion and Martin are referred to herein as "Defendants;" Microsoft and Defendants are referred to herein collectively as the "Parties").

## RECITALS

A. On September 26, 2001, Microsoft filed an action against Defendants in the United States District Court for the District of Minnesota entitled *Microsoft Corporation v. Ion Technologies Corporation and Paul Martin*, No. 01-1769-JNE/JGL (the "Action").

B. Microsoft alleged in the Action that Defendants had willfully infringed Microsoft's copyrights and trademarks by offering for sale and distributing counterfeit copies of Microsoft software throughout the United States, among other things.

C. On May 30, 2003, the Court granted in part Microsoft's motion for summary judgment, finding both Ion and Martin liable to Microsoft for copyright infringement, trademark infringement, false designation of origin, engaging in deceptive trade practices, and engaging in unfair competition, and ordered trial on the issues of willfulness and statutory damages.

D. Shortly before trial, at a Settlement Conference on October 22, 2004, the Parties reached a settlement of this matter. The Parties hereby memorialize the terms of this settlement in writing.

E. The Parties voluntarily enter into this Agreement and by so doing the Parties seek and intend to fully, completely, and finally resolve, terminate, and settle all disputes, claims, and actions which they assert against each other arising from the facts alleged in the Action, including those claims which were actually asserted or which could have been asserted in the Action or by counterclaim in the Action, and to preclude the possibility of further disputes between them arising out of the facts alleged in the Action.

## TERMS OF AGREEMENT

The parties agree as follows:

1. <u>Payment to Microsoft</u>. Defendants shall pay to Microsoft a total of Three-Hundred Thousand United States Dollars ($300,000.00) in installment payments. Defendants shall pay to Microsoft Thirty Thousand United States Dollars ($30,000.00) upon the execution of this Agreement (or no later than July 29, 2005) and Five Thousand United States Dollars ($5,000.00) per month for each of the following 54 months thereafter (payable on the first day of each month starting September 1, 2005, with a 10-day grace period). Payment shall be made by wire transfer to an account to be designated by Microsoft.

2. Reservation of Right to Assert Non-Dischargeability of Debt. The Parties agree that the payment obligations set forth in paragraph 1, above, are predicated upon allegations that Defendants willfully infringed Microsoft's registered trademarks and copyrights. Microsoft hereby expressly reserves it right to assert the non-dischargeable nature of the payment obligations set forth in paragraph 1, above, pursuant to 11 U.S.C. § 523(a)(6) during bankruptcy proceedings, if any, involving Defendants. Defendants agree that they will not challenge or otherwise dispute Microsoft's right to assert non-dischargeability.

3. Stipulation to Permanent Injunction. Concurrently with the execution of this Agreement, Microsoft and Defendants shall execute and file a Stipulated Permanent Injunction in the form attached hereto as Exhibit A.

4. Cooperation. Defendants agree to reasonably cooperate with Microsoft in connection with any civil litigation, prosecution or proceedings relating to alleged infringement of Microsoft's copyright or trademark rights by any current or former third party vendor, partner, or supplier of Defendants. Defendants agree that Microsoft and its counsel of record in this case may retain copies of all documents produced in this case by Defendants, including those marked "Confidential" or "Restricted," and they need not be returned to Defendants or destroyed. Furthermore, for a period of 36 months following the execution of this Agreement, Defendants agree to advise Microsoft of any d/b/a name changes or new entities owned and operated by Defendants that distribute Microsoft Software.

5. Continuing Jurisdiction of Court. The Parties agree that the United States District Court for the District of Minnesota shall continue to have jurisdiction of the Action and of this Agreement to the extent necessary to enforce this Agreement and the Stipulated Permanent Injunction.

6. Release of Claims by Microsoft. Except as otherwise provided by this Agreement, upon completion of the payment obligations described in paragraph 1, above, and entry of the Stipulated Permanent Injunction described in paragraph 3 , above, Microsoft, together with its assigns, successors, affiliated parent or subsidiary corporations, agents, officers, directors, employees, and attorneys, release and discharge Defendants together with their successors, affiliated parent or subsidiary corporations, employees, and attorneys, from any and all charges, claims, actions, causes of action, rights, demands, debts, obligations, damages, or accountings of whatever nature, known or unknown, which Microsoft has had or could have up to and until the date of this Agreement, whether at law or equity, including without limitation all claims that were or could have been asserted by Microsoft against Defendants in the Action.

7. Release of Claims by Defendants. Except as otherwise provided by this Agreement, upon execution of this Agreement and upon the entry of the Stipulated Permanent Injunction described in paragraph 3 , above, Defendants together with their successors, affiliated parent or subsidiary corporations, officers, directors, employees, and attorneys, release and discharge Microsoft, together with its assigns, successors, affiliated parent or subsidiary corporations, agents, officers, directors, employees, and attorneys, from

any and all charges, claims, actions, causes of action, rights, demands, debts, obligations, damages, or accountings of whatever nature, known or unknown, which Defendants have had or could have up to and until the date of this Agreement, whether at law or equity, including without limitation all counterclaims that were or could have been asserted against Microsoft, in the Action.

8. No Waiver of Future Claims. The Parties do not waive any future claims, including, but not limited to, claims arising from or relating to a breach of this Agreement.

9. Notices. Any notice provided for under this Agreement shall be sent

(a) to Microsoft at and in care of: Roy Bartlett, Covington & Burling, One Front Street, San Francisco, CA 94111.

(b) to Defendants at and in care of: Bruce H. Little, Lindquist & Vennum P.L.L.P., 4200 IDS Center, 80 South Eight Street, Minneapolis, MN 55402-2272.

10. Breach. The Parties agree that in the event of a breach of any provision of this Agreement, the non-breaching party shall be entitled to whatever remedies are available at law or equity, including, if otherwise available, its reasonable attorneys' fees and costs.

In the event of any subsequent breach by Defendants of the Stipulated Permanent Injunction described in paragraph 3, above, Microsoft shall be entitled to seek whatever remedies are available at law or equity, including, if otherwise available, its reasonable attorneys' fees and costs.

11. Authority. Each individual executing this Agreement on behalf of an entity represents and warrants that he or she is a duly authorized representative of that entity with full power and authority to bind it to each and every term and condition hereof, and that the entity on whose behalf he or she is signing has taken all steps necessary to authorize and approve its entering into and binding itself to each and every term and condition thereof. Each party represents and warrants to the others that he, she or it has taken all steps necessary to authorize and approve his, her or its entering into and binding himself, herself or itself to each and every term and condition of this Agreement and any documentation to be delivered in connection therewith. Each party making any of the foregoing representations or warranties shall indemnify, defend and hold harmless the other parties and the persons and entities receiving a release under this Agreement from any claim that, if true or valid, would breach that individual or party's representation or warranty.

12. Entire Agreement. This Agreement supersedes any prior or contemporaneous communications, whether written or oral, concerning the terms of this Agreement, and constitutes the complete and final agreement of the Parties with respect to the subject matter. The terms of this Agreement are contractual and may not be modified, except by agreement in writing signed by the party against whom enforcement of the modification is sought. Nor may any covenant, representation, warranty, or other provision

be waived, except by agreement in writing signed by the party against whom enforcement of the waiver is sought.

13. Parties Represented. Each party to this Agreement has been advised and represented by counsel in connection with the negotiation and preparation hereof, and each shall be deemed its co-author for purposes of the Agreement's construction.

14. No Waiver. The waiver by any party hereto of any right, privilege, covenant or condition hereunder will not operate as or evidence a waiver of any other, or a continuing waiver of the same, right, privilege, covenant or condition hereunder.

15. Choice of Law. This Agreement shall be governed by the law of the State of Minnesota applicable to contracts executed and to be wholly performed in that State. The Parties agree that all disputes arising in any way out of this Agreement shall be heard exclusively in, and the Parties irrevocably consent to jurisdiction and venue in, the state and Federal courts of Minnesota.

16. General Provisions.

(a) This Agreement shall take effect upon execution by all Parties hereto, and may be executed in counterparts, each of which shall have the effect of an original. A party shall be deemed to have executed this Agreement when it has signed below and sent to the other party via facsimile or overnight mail a copy of the signed Agreement.

(b) The language of this Agreement is a product of the mutual effort of the Parties and their attorneys. The Agreement shall be construed fairly as to all Parties, and it shall not be construed for or against any of the Parties on the basis of the extent to which that party has participated in drafting it.

(c) In the event any provision of this Agreement is found to be unenforceable, that finding shall not affect the enforceability of any other provision hereof.

IN WITNESS WHEREOF, the Parties have executed this Agreement by signing below.

DATED: July ____, 2004

Ion Technologies Corporation, a Minnesota corporation

_______________________________

By: Paul Martin

DATED: July ____, 2004

Paul Martin, an individual

_______________________________

By: Paul Martin

DATED: July ____, 2004

MICROSOFT CORPORATION, a Washington Corporation

_______________________________

By: Bonnie MacNaughton
Senior Attorney